R. E. JONES ET AL. v. JARVIS WHICHARD ET AL.

(Filed 8 October, 1913.)

1. **Estates—Heirs of the Body—Rule in Shelley's Case—Words and Phrases—Descriptio Personarum.**

For the application of the rule in *Shelley's case* to a conveyance to one for life and "the heirs of his body," it must appear that the words "heirs of the body" were used in their technical sense, carrying the estate to such heirs as an entire class to take in succession, with the effect to convey "the same estate to the persons, whether they take by descent or purchase," and when it appears from the perusal of the entire instrument that the words were not intended in their ordinary acceptation as words of inheritance, but simply as *descriptio personarum*, designating certain individuals of the class, or that the estate is thereby conveyed to "any other person in any other manner or quality than the canons of descent provide," the rule does not apply, and the interest of the first taker is an estate for life.

2. **Same—Contingent—Remainders.**

An estate to J. in the conveyance clause of a deed, and in the habendum, to J. and his wife, "during their natural lives, then to their bodily heirs, provided they leave any, and if not to be equally divided among my nearest of kin, etc.," conveys to J. and his wife a life estate, with remainder over to their children, who take upon the contingency of their surviving their parents, etc. *Springs v. Scott*, 132 N. C., 548, cited and distinguished.

3. **Husband and Wife—Contingent Remainders—Seizure of Wife—Curtesy.**

Where a contingent remainder in lands is limited to the wife after a life estate to another, and the wife predeceased the life tenant, the husband may not become tenant by the curtesy therein, for she has never been seized of the lands.

4. **Deeds and Conveyances—Conflicting Clauses—Construction of Deeds.**

Where an estate in fee is granted in the conveyance clause of the deed, and from the habendum and other parts of the deed it appears that the grantor intended to convey an estate for life, with contingent limitations over, the two clauses in the deed will not. be regarded as repugnant, but as in explanation of each other, and the intent of the grantor, as gathered from the whole instrument, will prevail.

163—16

APPEAL by C. F. Page from *O. H. Allen, J.,* at April Term, 1913, of PITT.

Cause heard on case agreed and after transfer from clerk Superior Court, the question presented being the proper distribution of a fund arising from a sale of land for division.

On the hearing it was made to appear that, in August, 1866, Major Jones made a deed to his son, R. M. Jones, etc., for 40 acres of land, in terms as follows:

"This indenture, made this the 11th day of August, A. D. 1866, between Major Jones of the first part and Robert M. Jones of the second part, both of the county of Pitt and State of North Carolina:

"Witnesseth, That the said Major Jones, for and in consideration of natural love and affection which he has unto the said Robert M. Jones, his son, has given, granted, aliened, released and confirmed, and by these presents do give, grant, alien, release, and confirm unto the said Robert M. Jones, his heirs and assigns, a certain tract or parcel of land situate as follows:

"To have and to hold the said tract or parcel of land and all the appurtenances thereof to him, the said Robert M. Jones and Martha F. Jones, his wife, during their natural life, and then to their legal bodily heirs, provided they leave any, and if not, to be equally divided among my nearest of kin, etc."

That on November 27, 1900, said R. M. Jones made a deed for the land to his wife for life, remainder to seven of his nine children and not including a son, S. L. Jones, or a daughter, Huldah, intermarried with C. F. Page; that Huldah Page had issue born alive, a son, and she and son died before R. M. Jones and wife, and these last having also died, present suit was instituted for sale of land for division.

Plaintiffs are the seven children of R. M. Jones and wife, who were grantees in the deed of R. M. Jones to his wife, etc.

Defendants are S. L. Jones, another son, and C. F. Page, surviving husband of Huldah.

On these facts, it was contended for plaintiffs that, under the rule in *Shelley's case,* the deed from Major Jones con-

veyed a fee simple, and that when R. M. Jones conveyed the property to his wife for life and remainder to seven of their children, plaintiffs, the deed passed the entire interest, and defendants were thereby excluded.

Defendant S. J. Jones contended that the deed of Major Jones conveyed only a life estate, remainder to his children or issue, in the sense of children or grandchildren, and that he, as one of them, was entitled to a child's interest.

It was insisted for C. F. Page that the deed from Major Lord conveyed a life estate to R. M. Jones and wife, remainder to their issue, in the sense of children and grandchildren, and that this remainder was vested in such children, and that on the death of his wife, Huldah, leaving an infant son, her interest descended to such son, and on his death without issue and without brother or sister, the share passed to C. F. Page, the father, under 6 Canon of Descent, Revisal, ch. 30.

The court below, being of opinion that the deed of Major Jones conveyed a life estate, remainder to the children and grandchildren, contingent on their surviving their parents, entered judgment that defendant S. L. Jones was entitled to a share in the fund, and that C. F. Page was excluded, his son having died before R. M. Jones and wife.

From this judgment said C. F. Page, having duly excepted, appealed.

*Harding & Pierce and Ward & Grimes for plaintiff.*
*Julius Brown for defendant.*

HOKE, J., after stating the case: A very full and satisfactory statement of the rule in *Shelley's case* is given in Preston on Estates as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without interposition of another estate, of an interest of the same legal or equitable quality to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

In approval and illustration of the rule as stated, there are many decisions here and elsewhere to the effect that, in order to its proper application, the word "heirs" or heirs of the body (these last by reason of our statute, Revisal, sec. 1578) must be used in their technical sense, carrying the estate to such heirs as an entire class to take in succession from generation to generation, and they must have the effect to convey "the same estate to the same persons, whether they take by descent or purchase," and, whenever it appears from the context or from a perusal of the entire instrument that the words were not intended in their ordinary acceptation of words of inheritance, but simply as a *descriptio personarum* designating certain individuals of the class, or that the estate is thereby conveyed to "any other person in any other manner or in any other quality than the canons of descent provide," the rule in question does not apply, and interest of the first taker will be, as it is expressly described, an estate for life. *Puckett v. Morgan,* 150 N. C., 344; *Smith v. Proctor,* 139 N. C., 314; *Wool v. Fleetwood,* 136 N. C., 460-470; *May v. Lewis,* 132 N. C., 115; *Whitesides v. Cooper,* 115 N. C., 570; *Mills v. Thorne,* 95 N. C., 362; *Ward v. Jones,* 40 N. C., 404. In the recent and well considered case of *Puckett v. Morgan, supra,* the language of the instrument was, "To M. during her life, then to her bodily heirs, *if any;* but, if she have none, back to her brothers and sisters," well-nigh in the exact terms of the present deed, and it was held that, by reason of the context, the words "bodily heirs" were so qualified as to indicate that they were used merely as a *descriptio personarum* and that M. took only a life estate. The authority is, in our opinion, controlling and fully supports the judgment of his Honor in denying the application of the rule. The cases of *Morrisett v. Stevens,* 136 N. C., 160, and *Whitfield v. Garris,* 134 N. C., 24, and others cited by counsel, when properly understood, do not militate against this construction.

In *Whitfield's case* and in *Morrisett's case* the ulterio disposition of the property was not and was not intended as a limitation on the estate conveyed to the first taker, but was a provision whereby one stock of inheritance on certain contingen-

cies was substituted for another, the second to hold as purchasers direct from the grantor or original owner. *Sessoms v. Sessoms,* 144 N. C., 121. The case of *Puckett v. Morgan* is also authority for the position that this deed of Major Jones conveys an estate for life to R. M. Jones and wife, remainder to their issue in the sense of children and grandchildren. This meaning has not infrequently prevailed ·when it appeared to be the clear intent of the instrument. *Smith v. Lumber Co.,* 155 N. C., 389-93; *Sain v. Baker,* 128 N. C., 256; *Rollins v. Keel,* 115 N. C., 68, etc. We concur also in the view of his Honor, that this remainder is contingent on these devisees being alive to fill the description at the time of the falling in of the particular estate. This construction is also sustained by *Puckett v. Morgan,* and the well reasoned case of *Latham v. Lumber Co.,* 139 N. C., 9, and *Bowen v. Hackney,* 136 N. C., .187, are to like effect. It was contended for defendant that this was a vested remainder, relying on certain expressions in *Ex parte Dodd;* 62 N. C., 97, quoted by the Court in *Springs v. Scott,* 132 N. C., 552, but the position is not well taken. In *Springs v. Scott* the Court was dealing with the power to sell contingent remainders, and, in using the expression that "such power existed whensoever one was born in whom the estate *can vest,"* the judge delivering the opinion did not intend that the remainder thereby became vested, but that the power in question arose whenever one of the class was born in whom the estate would vest on the happening of the contingency. Those cases, in the aspect suggested, have no bearing on the question presented. The remainder in our case was contingent, and, applying the doctrine as above stated, it was properly held that defendant S. L. Jones was entitled to a child's portion of the estate, he being alive to claim it when the life estate terminated, thus filling the description as devisee, and that Huldah L. Page and her son, both having died before the life tenants, did not fill such description and had no interest or estate which the father, C. F. Page, could inherit. The suggestion that C. F. Page could claim as tenant by curtesy is without merit; the existence of the life estate in R. M. Jones and wife would in

any case prevent the seizin required for the validity of such a claim. *In re Robert Dixon,* 156 N. C., 26; *Redding v. Voght,* 140 N. C., 562.

We are not inadvertent to the fact that the deed of Major Jones in the premises, if it stood alone, would convey a fee simple, nor to the legal position that at common law, while it was the usual province of the habendum to define and determine the quantity of the estate or to explain or qualify the premises, it was not allowed to create an estate entirely repugnant to the interest conveyed in the premises, an instance of this appearing in *Haffner v. Irwin,* 20 N. C., 570, where the premises conveyed an estate to A. and his heirs, habendum to B. and his heirs. Such a position is still recognized here in proper cases, as appears in *Wilkinson v. Norman,* 139 N. C., 41, and other cases of like kind. But in the case of *Triplett v. Williams,* 149 N. C., 394, this Court, in a well sustained opinion by *Associate Justice Brown,* announced the decision that, although a deed in its premises professed to convey an estate to the grantee and his heirs, it would not have the effect to convey a fee simple when it clearly appeared from the habendum or other portions of the instrument that it was the intent to convey only a life estate. That in such case it was not proper to construe the clauses as entirely repugnant, but that the one was in explanation of the other, adopting on that question the rule as given in 1st Devlin on Deeds, sec. 215, as follows: "It may be formulated as a rule, that where it is impossible to determine from the deed and surrounding circumstances that the grantor intended the habendum to control, the granting words will govern; but if it clearly appears that it was the intention of the grantor to enlarge or restrict the granting clause by the habendum, the latter must control."

There is no error, and the judgment of the lower court must be affirmed.

Affirmed.